IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ANGELA WILLINGHAM,                )
                                  )
            Petitioner,           )
                                  )
    v.                            )        CV 118-027
                                  )        (Formerly CR 113-010)
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )
_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Correctional Complex Camp, F-1 in Coleman, Florida, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment

On January 11, 2013, the grand jury in the Southern District of Georgia charged Petitioner with one count of conspiracy to defraud the government, thirty-two counts of theft of public money, four counts of misuse of health identifiers, and four counts of aggravated identity theft. United States v. Willingham, CR 113-010, doc. no. 3 (S.D. Ga. Jan. 11, 2013) ("CR 113-010"). The Court appointed attorney Peter D. Johnson to represent Petitioner. Id., doc. no. 71.

## B.    Agreement to Plead Guilty

On September 9, 2013, Petitioner pleaded guilty to Counts 1, 93, 98, 122, and 127 of

the indictment.  Id., doc. nos. 321-323.  The plea agreement contained a factual basis for the

plea which stated in relevant part:

> Between 2009 and 2011, [Petitioner and her co-defendants] did receive United
> State Currency from refunds from the United States Treasury based on tax
> returns that contained one or more false statements [and] filed 90 fraudulent,
> false, or fictitious tax returns totaling over $500,000 in false, fictitious, or
> fraudulent claims. . . . [B]eginning on or about January 1, 2009 and continuing
> until the return of this indictment, in the Southern District of Georgia,
> [Petitioner] did combine, conspire, confederate and agreed together with other
> known and others unknown to knowingly and intentionally defraud the United
> State Department of Treasury by obtaining and attempting to obtain payment
> of false claims. . . .  The parties further agree and stipulate for the purposes of
> relevant conduct and the sentencing guideline calculation in this case, that
> based on the evidence available to the government at this time, the loss amount
> is not less than $400,000 but not more than $1,000,000. . . . [Petitioner]
> knowingly and for a reason other than permitted by Title 42, United States
> Code, Chapter 7, Subchapter XI, Part C, used and caused to be used,
> individually identifiable health information for personal gain.  Specifically,
> [Petitioner and her co-defendants] did obtain individually identifiable health
> information relating to individuals, that is, patients' names, dates of birth, and
> Social Security numbers, which had been collected by a health care providers
> [sic], with the intent to use said information for personal gain for themselves
> and other co-defendants, in that the health information was used to file
> fraudulent tax returns, which resulted in tax refunds to which the defendant(s)
> were not entitled. . . . [Petitioner], aided and abetted by others, did knowingly
> transfer, possess and use, without lawful authority, means of identification of
> other persons, that is names and social security numbers, during and in relation
> to Theft of Public Money, a felony violation of Federal law pursuant to 18
> U.S.C. 641, as charged in this indictment.

Id., doc. no. 323, pp. 5-8.

The plea agreement also contained an appeal and collateral attack waiver, as

follows:

> To the maximum extent permitted by federal law, [Petitioner] voluntarily and
> expressly waives the right to appeal the conviction and sentence and the right
> to collaterally attack the conviction and sentence in any post-conviction

proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of her sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of her sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id. at 5.

Petitioner attested she read and carefully reviewed the plea agreement with her attorney, understood each provision, and voluntarily agreed to it. Id. at 11-14.

### C.     Change of Plea Hearing

During the change of plea hearing, the Honorable J. Randal Hall established Petitioner's competence to enter a guilty plea if she desired. Id., doc. no. 470, p. 24. Petitioner also testified under oath she had adequate time to discuss her case with her attorney and was satisfied with the services rendered by Mr. Johnson. Id. at 9. Chief Judge Hall read the indictment and asked if Petitioner understood the charges therein. Id. at 6-8. Petitioner confirmed she understood. Id. at 8-9. Chief Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she understood those rights. Id. at 9-11.

Among the rights explained, Chief Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Petitioner affirmed no one had threatened, pressured, or promised her anything to plead guilty, id. at 3, nor had anyone promised, predicted, or prophesied Petitioner would receive a specific sentence. Id. at 17.

In addition, Chief Judge Hall reviewed the waiver provision in Petitioner's plea agreement, informing Petitioner she was "giving up or waiving [her] right to appeal [her] conviction and sentence either directly or indirectly in a post-conviction proceeding on any ground." Id. at 13. However, Chief Judge Hall explained Petitioner could appeal if she was sentenced above the guideline range, above the statutory range, or if the government appealed. Id. Petitioner confirmed she understood. Id. Chief Judge Hall also asked Petitioner if she discussed her plea agreement with counsel and if she signed the plea agreement, cautioning Petitioner if she did, she would be bound by all the terms of the agreement. Id. at 10. Petitioner affirmed she discussed the plea agreement with counsel, signed the plea agreement, and understood she would be bound by all the terms within the plea agreement. Id. at 11-12.

Chief Judge Hall heard the factual basis for Petitioner's guilty plea from Agent Roger Garland with the Internal Revenue Service (IRS). Id. at 18-22. Agent Garland summarized the facts underlying Petitioner's offense as follows:

> It started from information received from a local bank. . . . FBI Special Agent Paul Kubala and Richmond [C]ounty Sheriff's Office Investigator Mike Lamb and I went out to interview some of the witnesses in this case. Through the course of the investigation it was determined that Angela Willingham is the organizer of the tax fraud scheme that we're investigating. Her role was to prepare the tax returns. She came out with the amount to pay to each person who took the information to her. She also recruited individuals . . . from 2009 to approximately last year . . . .
>
> The basis of her scheme was she would prepare a false form W-2Gs from the Georgia Lotto and on these form W-2Gs it . . . would report winnings from the year. When these individuals have winnings, they also have tax withholding. On these false W-2Gs the tax withholding would be greater than normal; so resulting in a refund. When you file the tax return with a form W-2G, it results in a tax refund. So that was the basis of how she got the refunds . . . .

The tax returns were filed electronically in other individuals names and these victims were unaware that tax returns were filed in their names. They went into a variety of different bank accounts in this scheme. Angela herself had . . . bank accounts at two separate banks -- at SRP Federal Credit Union and Bank of America -- and within those two banks she had numerous accounts. This was a recurring theme over this investigation . . . , multiple bank accounts in people's names.

These tax refunds were going to these bank accounts and the money would be immediately withdrawn from the bank account holder and divvied out according to . . . who gave the information, who took the money out, and Angela would get her cut as well.

Janice Smalley was an employee of MCG. She stole some patient names of MCG while she was working there and Patrice Roberson was employed at Gracewood. She did the same thing -- stole patient names from Gracewood.

These individuals would take the name, the date of birth, social security number, from the location. A lot of times they write it down on a piece of paper and then turn it over to Angela so she would prepare the tax return in this person's name.

There were approximately . . . 177 tax refunds totaling $510,708 [in Petitioner's bank accounts].

Id. at 17-18.

Chief Judge Hall accepted the guilty plea, finding a sound factual basis for it. Id. at 24.

### D.    Presentence Investigation Report (PSI)

The United States Probation Office prepared a PSI, which set Petitioner's base offense level at six for Counts One, Ninety-Three, and Ninety-Eight. PSI ¶¶ 39, 47. As to Count One, Petitioner's adjusted offense level was thirty-four after enhancements of: (1) fourteen levels because of the loss amount; (2) six levels because the offense involved 250 or more victims; (3) two levels because the offense involved sophisticated means; (4) two levels because the victims were vulnerable; (5) and four levels due to her role as organizer or leader

of a criminal activity involving five or more participants. PSI ¶¶ 40-44, 46. As to Counts Ninety-Three and Ninety-Eight, Petitioner's adjusted offense level was twenty-six after enhancements of: (1) ten levels because of the loss amount; (2) two levels because the offense involved at least ten but less than fifty victims; (3) two levels because the offense involved sophisticated means; (4) two levels because the victims were vulnerable; (5) and four levels due to her role as organizer or leader of a criminal activity involving five or more participants. PSI ¶¶ 48-52, 54. Pursuant to U.S.S.G. § 3D1.3(b), which requires application of the offense guideline that produces the highest offense level, Petitioner's combined adjusted offense level was thirty-four. PSI ¶¶ 38, 55. This combined adjusted offense level was decreased three points for acceptance of responsibility, resulting in a total offense level of thirty-one. PSI ¶¶ 57-59.

Based on a total offense level of thirty-one and a criminal history category of IV, Petitioner's guideline imprisonment range for Counts One, Ninety-Three, and Ninety-Eight was between 151 and 188 months. PSI ¶ 100. For Counts 122 and 127, the guideline imprisonment range was the minimum term of imprisonment required by statute, that is, twenty-four months on each count to be served consecutively to any other sentence. Id.

**E. Sentencing**

Sentencing was held on September 15, 2015. CR 113-010, doc. nos. 421, 423. Through counsel, Petitioner submitted the following two objections to the PSI: (1) the number of victims should be one, that is, the IRS; and (2) the IRS is not a "vulnerable victim" as to trigger the application of U.S.S.G. § 2B1.1. PSI Addendum. In addition, the government filed a motion for downward departure from the applicable sentencing guidelines based on Petitioner's substantial assistance to the government. Id., doc. 425.

At sentencing, Mr. Johnson revived his objections to the PSI. CR 113-010, doc. no. 465, pp. 3-6. After hearing arguments from Mr. Johnson and AUSA Rhodes regarding the objections, Chief Judge Hall overruled them. Id. at 6-8. In addition, Mr. Johnson further argued the PSI contained double, sometimes triple, counting of tax returns for purposes of the PSI calculations. Id. at 8. After clarifying with Mr. Eller, the probation officer who prepared the report, that there was indeed no double counting, Chief Judge Hall overruled that objection as well and adopted the factual statements in the PSI as the Court's findings of facts in the case. Id. at 8-9.

After hearing mitigation arguments from Mr. Johnson and AUSA Rhodes, Judge Hall granted the government's motion for downward departure and sentenced Petitioner to a below guidelines range sentence of 170 months of incarceration, three years of supervised release, a $500.00 special assessment, and $1,290,145.41 in restitution. Id., doc. no. 465, pp. 14-19; doc. no. 427. Final judgment was entered on June 18, 2014. Id., doc. no. 427. Petitioner did not file an appeal.

**F. Post-Conviction Proceedings**

On June 19, 2015, Petitioner filed a 28 U.S.C. § 2255 motion to vacate her sentence. Willingham v. United States, CV 115-092, doc. no. 1 (S.D. Ga. June 19, 2015). In that motion, Petitioner argued counsel was ineffective for failing to conduct an adequate investigation, file pre-trial motions, and properly advise her of the circumstances and consequences of pleading guilty versus going to trial. Id., doc. nos. 4, 5. She further argued counsel was ineffective during and after sentencing for failing to object to certain PSI calculations, submit mitigating evidence, file a motion for a downward variance based upon disparate sentences of co-defendants, and file a direct appeal as requested. Id.

7

After holding an evidentiary hearing, this Court granted Willingham's request for an out-of-time appeal and dismissed her other claims without prejudice. Id., doc. nos. 13, 15, 18. Judgment in the civil § 2255 action was entered on March 7, 2016, id., doc. no. 19, triggering a modified judgment dated March 7, 2016. CR 113-010, doc. no. 488.

Willingham subsequently filed a notice of appeal, and her appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Id., doc. no. 490; (doc. no. 5-1, Ex. A). Willingham filed a reply in opposition raising the following two grounds: (1) the Rule 11 inquiry violated Petitioner's substantive due process rights; and (2) the district court lacked jurisdiction. (Doc. no. 5-2, Ex. B.) The Eleventh Circuit independently reviewed the entire case record and counsel's assessment of the relative merit on appeal, determined there were no issues of arguable merit, and affirmed Willingham's convictions and sentences on January 30, 2017. United States v. Willingham, 674 F. App'x 973 (11th Cir. 2017).

On February 12, 2018, Petitioner timely filed the present 28 U.S.C. § 2255 motion. (Doc. no. 1.) Petitioner alleges counsel was ineffective because he:

1)    failed to conduct an adequate pretrial investigation, including failure to research applicable law and interview witnesses;

2)    failed to file any substantive pretrial motions;

3)    failed to inform and advise Petitioner of the likely consequences of pleading guilty rather than proceeding to trial, including the maximum penalty if she were convicted at trial;

4)    labored under a conflict of interest;

5)    failed to object to the sophisticated means enhancement in the PSI;

6)    failed to challenge the 250 or more victims and vulnerable victims enhancements;

7)      failed to present evidence in mitigation and object to Petitioner's sentence being substantively unreasonable; and

8)      failed to file a motion for a downward variance based on disparity in sentencing.

(Id. at 4-6; doc. no. 1-3, pp. 14-29.)

Respondent asserts Petitioner's claims are barred by the collateral attack waiver and counsel was not ineffective, rendering Petitioner's claims meritless.  (Doc. no. 5.)

## II.     DISCUSSION

### A.      There is No Need for an Evidentiary Hearing

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as

a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner's Conflict of Interest Claim in Ground Four Is Meritless

Petitioner alleged her attorney labored under a conflict of interest because he "represented the 'court' not [Petitioner]" and assisted her in signing a plea agreement containing a collateral attack waiver. (Doc. no. 1-3, pp. 23-27; doc. no. 8, pp. 2-4.) In order to establish a conflict of interest, a petitioner "must show *first*, that his attorney had an actual conflict of interest, and *second*, that the conflict adversely affected counsel's performance." Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001) (emphasis in original) (citation omitted). To establish adverse effect, a petitioner "must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." Id. at 1278. If, as here, a petitioner pleaded guilty, the Court "looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." Id.

Here, that Mr. Johnson was appointed by the Court did not create a conflict of interest. Indeed, appointment of attorneys for indigent defendants is not only a regular practice in courts across this nation but required by the Constitution. See Gideon v. Wainwright, 372 U.S. 335, 339-345 (1963) (holding Sixth Amendment requires indigent defendant to be appointed counsel if he cannot afford it). Moreover, even if Petitioner could show an actual conflict, she has alleged no facts supporting adverse effect, such as a plausible alternative course of defense or how the conflict impacted her decision to plead guilty. Pegg, 253 F.3d at 1278.

Nor did the collateral attack and appeal waiver in Petitioner's plea agreement create a conflict of interest. As a Court in this District has previously explained:

> Long has the Eleventh Circuit approved the use of such waivers and never has it found one to inherently generate a conflict. See United States v. Benitez-Zapata, 131 F. 3d 1444, 1446 (11th Cir. 1997) (waivers enforced if the court questions the defendant about it or if the record otherwise shows he understood its full significance). The Georgia Supreme Court—the ultimate arbiter of ethical rules that apply to attorneys practicing in Georgia, including in this Court—also approves of such waivers, see Allen v. Thomas, 265 Ga. 518, 520 (1995) ("[W]aivers of the right to appeal and waivers of the right to seek post-conviction relief" each "comport[ ] with public policy[ ] and [are] enforceable."), and has never found conflicts. In fact, Fed. R. Crim P. 11(b)(N) expressly contemplates appeal and collateral attack waiver provisions. Doing so would be strange indeed if such provisions violated a defendant's Sixth Amendment rights.

Drayton v. United States, No. CR612-018, 2016 WL 2646650, at *2 (S.D. Ga. May 9, 2016), report and recommendation adopted, No. CR612-018, 2016 WL 3101679 (S.D. Ga. June 1, 2016), certificate of appealability denied, No. 16-15076-A, 2017 WL 3225722 (11th Cir. Feb. 16, 2017).

Accordingly, Petitioner's claim that her counsel labored under a conflict of interest is meritless and should be denied.

### C. Because Petitioner's Guilty Plea was Knowingly and Voluntarily Entered, Her Collateral Attack Waiver is Valid and Bars Grounds One to Three and Five to Eight

#### 1. Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was

11

intelligent and voluntary.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  <u>United States v. Brown</u>, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  <u>Id.</u>  Thus, a defendant must receive "real notice of the true nature of the charged crime."  <u>Id.</u>

The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005) (<i>per curiam</i>) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  <u>Id.</u> at 1020 (quoting <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 83 (2004)).

## 2. Chief Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea

Chief Judge Hall informed Petitioner in clear terms of the charges to which she was pleading guilty, as well as the penalties that might be imposed in the event of Petitioner's conviction, and Petitioner testified she understood the charges and penalties. CR 113-010, doc. no. 470, pp. 6-9, 13-17. Petitioner also admitted to the facts presented by the government as the factual basis for the pleas and told Chief Judge Hall she wanted to plead guilty. Id. at 22-23. Chief Judge Hall provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed she understood her decision to plead guilty would result in a waiver of these rights. Id. at 9-11. Petitioner testified no one had made her any promises other than those contained in the plea agreement to get her to plead guilty, and her decision to plead guilty was not the result of force, threats, or pressure. Id. at 3, 13. Petitioner also testified that she had reviewed her case with counsel and was satisfied with the help she had received from counsel. Id. at 9. Thus, Chief Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of her guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not shown a reasonable probability that but for any alleged error at the Rule 11 proceeding she would not have entered her guilty plea. See Dominguez Benitez, 542 U.S. at 83.

As such, Petitioner will not now be heard to claim her guilty plea was not knowingly and voluntarily entered. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding. See United States v. Stitzer,

785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ( "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

### D. Petitioner's Valid Collateral Attack Waiver Bars Grounds One through Three and Five through Eight

Grounds One through Three and Five through Eight of Petitioner's § 2255 motion are precluded by the waiver provision in the plea agreement, in which Petitioner waived her right to collaterally attack her conviction and sentence.  It is well settled a waiver of the right to collaterally attack a sentence and conviction is only enforceable if the waiver is knowing and voluntary.  United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008); see also United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365-67 (N.D. Ga. 2004) (applying case law concerning waiver of direct appeal to waiver of right to collateral proceedings).

"To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then an appeal and collateral attack waiver is enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has demonstrated the existence of a valid collateral attack waiver.

The plea agreement signed and verified by Petitioner fully set forth that, as a condition of her guilty plea, she was waiving any right to collateral attack of her sentence and conviction or the knowing and voluntary nature of her guilty plea. (See CR 113-010, doc. no. 323, p. 5 ("[Petitioner] voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground[.]").) Furthermore, Judge Hall reviewed Petitioner's plea agreement during the plea colloquy, and specifically referenced the waiver provision. (Id., doc. no. 470, p. 12-13.) Judge Hall explained as a result of the waiver provision, Petitioner was "giving up or waiving [her] right to appeal [her] conviction and sentence either directly or indirectly in a post-conviction proceeding on any ground." (Id. at 13.) Petitioner acknowledged she understood and agreed to the terms of the plea agreement. (Id.) Even now, Petitioner "admits that she had stated on the record that she understood what she was waiving." (Doc. no. 8, p. 5.)

The collateral attack waiver provided for three limited exceptions: Petitioner could file a direct appeal or collateral attack if her sentence (1) exceeded the statutory maximum, or (2) by variance or upward departure, was higher than the advisory sentencing guideline range as found by the sentencing court, or (3) was appealed by the government. (Id., doc. no. 323, p. 5.) None of Petitioner's claims in Grounds One through Three and Five through Eight fall within the exceptions to the collateral attack waiver. They do not allege Petitioner's sentence exceeded the statutory maximum or that it was higher than the advisory sentencing guideline range, and are thus barred by the collateral attack waiver. See Williams, 396 F.3d at 1341-42 (11th Cir. 2005) (precluding claim for ineffective assistance of counsel at sentencing based on valid sentence-appeal waiver).

15

Thus, the collateral attack waiver bars Petitioner's claims in Grounds One through Three and Five through Eight because they do not fall within the narrow exceptions to the waiver.  See Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (*per curiam*) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement); United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (*per curiam*) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver).  Accordingly, the Court finds Petitioner is not entitled to relief on these grounds.  Even if the collateral attack waiver does not bar these grounds, they are meritless as explained *infra*.

**E.     Even If Not Barred by the Collateral Attack Waiver and Guilty Plea, Petitioner's Ineffective Assistance Claims in Grounds One through Three and Five through Eight Are Meritless**

**1.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003).  Petitioner must show counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  "Given the strong presumption in favor of competence, the

petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Therefore, Petitioner must show both counsel's representation fell below an objective standard of reasonableness, *and* there is a reasonable probability that but for counsel's errors, she would have insisted on going to trial. Id. at 56-59.

### 2. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground One

Petitioner claims in Ground One that, prior to entry of her guilty plea, counsel failed to conduct an adequate investigation. (Doc. no. 1, p. 4; doc. no. 1-3, pp.15-18.) In particular, Petitioner asserts Mr. Johnson failed to (1) visit and communicate with her as frequently as necessary; (2) research the facts and case law; (3) investigate potential defense witnesses as requested; (4) investigate whether the victim count included legally prepared tax returns for which her legitimate fee payments were deposited into her bank account; and (5) retain a forensic account to analyze and determine the loss amount and number of victims. (Doc. no. 1-3, pp. 15-18.)

As an initial matter, Petitioner's new allegations, to the extent they concern pre-sentence efforts by Mr. Johnson, directly contradict her sworn testimony at her Rule 11 hearing, where she stated under oath that she had had enough time to consult with Mr. Johnson and was satisfied with his representation. CR 113-010, doc. no. 470, p. 9; see Stitzer, 785 F.2d at 1514 n.4 ("if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). Moreover, whether

or not Mr. Johnson was ineffective, Petitioner cannot establish the prejudice required to sustain an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Petitioner does not establish how any of the actions she contends Mr. Johnson failed to take would change the outcome of her case. While she claims Mr. Johnson failed to research the facts and case law or visit her enough to discuss her case, she does not indicate how doing so would have led to an alternative viable defense against these charges. Nor does she identify the supposed "defense witnesses" Mr. Johnson could and should have interviewed. While Petitioner contends Mr. Johnson's failure to conduct adequate pretrial investigations prejudiced her, she never alleges there was a reasonable probability, but for Mr. Johnson's performance, she would have gone to trial instead of pleading guilty, which is the touchstone for prejudice in the guilty plea context. Hill, 474 U.S. at 59; Stephens, 678 F.3d at 1225. Instead, she merely alleges she was "unable to make an informed decision on whether [she] should plead guilty or proceed to trial." (Willingham Aff., doc. no. 1-1, ¶ 6.) Such equivocation is insufficient to establish prejudice, and thus her ineffective assistance claim fails.

Petitioner contends Mr. Johnson should have been able to remove the sentencing enhancement for 250 victims or more, and reduce the loss amount below the stipulated bottom of $400,000, by retaining a forensic accountant and conducting a more thorough investigation. Petitioner never explains the work a forensic accountant should have performed or how the expert could have reduced the number of victims below 250 or loss amount below $400,000, the low end of the stipulated amount. (Doc. 323, Pg. 6; PSI ¶ 40).

Ms. Willingham claims there are names on the victim list of friends and relatives for whom she prepared legitimate tax returns. She never bothers to identify any of these relatives or friends by name. Nor does she allege she ever informed Mr. Johnson of this specific contention or the names of these friends and relatives. At most, she alleges telling Mr. Johnson "of the alleged miscounting of the . . . number of victims." In fact, however, Mr. Johnson made a miscounting argument. The presentence report contained a comprehensive list of 267 alleged victims. Mr. Johnson argued at sentencing there were names listed twice or thrice that should be removed to bring the number below 250. However, the probation officer explained on the record at sentencing he started with 320 names and deposits and reduced it to 267 after removing duplicate deposits for the same victim, deposits split between two accounts, and any deposits for which the associated tax returns were not located. Petitioner never explains in specifics how the probation officer's calculation is incorrect and what names were erroneously counted. The only specific arguments are those advanced by Mr. Johnson at sentencing, which the Court rejected when he adopted the probation officer's calculation.

For these reasons, Petitioner has failed to show she suffered any prejudice from Mr. Johnson's alleged failure to retain a forensic accountant or more thoroughly investigate the number of victims and loss amount.

### 3. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Two

Petitioner claims in Ground Two that counsel was ineffective for failing to file substantive pretrial motions. (Doc. no. 1, p. 4; doc. no. 1-3, pp. 18-20.) In particular, Petitioner contends counsel should have filed a motion for discovery, a request for Rule

404(b) evidence, a motion for <u>Brady</u>/<u>Giglio</u> material, a motion to compel agent to preserve rough notes, a motion for identity of confidential informants and for equal access to for purposes of interview, a motion to dismiss for want of sufficiency, a motion to obtain grand jury testimony, motion for a private investigator, and motion for a forensic accountant. (Doc. no. 1-3, p. 19.)

"[T]he failure to file a pretrial motion is not ineffective assistance of counsel if there is not a reasonable probability of success." <u>Rogozinski v. United States</u>, No. 6:08-CR-28-ORL-31DAB, 2011 WL 2893815, at *2 (M.D. Fla. July 20, 2011), <u>aff'd</u>, 516 F. App'x 900 (11th Cir. 2013) (citation omitted); <u>see also</u> <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."). Here, despite compiling a laundry list of motions her counsel should have filed, Petitioner fails to allege how any of these motions had a reasonable probability of success.

Even without filing pretrial motions, defense counsel for each of the defendants in this case, including Mr. Johnson, received extensive discovery as part of the government's "expanded discovery" policy. CR 113-010, doc. no. 240, pp. 2-3. This discovery included "the investigative reports, scientific reports (if any), and other documents which are material to the case (attorney and agent work product excepted)," to further include "all known statements by the defendants," defendants' criminal records, results of any scientific tests, "all recordings (if any) of the alleged criminal transactions," and witness statements. <u>Id.</u> The government further explained its policy with regard to disclosing the identity of any confidential informant, made available for examination any physical evidence, and promised to have agents retain their rough notes. <u>Id.</u> Finally, the government agreed to provide Jencks Act material, including grand jury transcripts, and <u>Giglio</u> material one week prior to trial and

<u>Brady</u> material whenever it was received.  <u>Id.</u>  Thus, Petitioner would not have obtained any further discovery by counsel filing pretrial motions.

Most damning to Petitioner's claim is the Court found many of these same motions filed by her co-defendants moot based on the government's discovery policy detailed above. CR 113-010, doc. nos. 264-69.  As to her non-discovery motions, Petitioner fails to explain how filing motions for a private investigator and forensic accountant and to dismiss for want of sufficiency would have changed her position in the case.  <u>See</u> <u>Rogozinski</u>, 2011 WL 2893815, at *2 ("[Petitioner] has made no showing that his situation would be different if counsel had filed pretrial motions.")  Therefore, as Petitioner cannot show any of these motions had a "reasonable probability of success," and her claim of ineffective assistance fails.  <u>Id.</u>; <u>Martin v. United States</u>, No. 2:14CV666-WKW, 2017 WL 1496961, at *4 (M.D. Ala. Feb. 28, 2017), <u>report and recommendation adopted</u>, No. 2:14-CV-666-WKW, 2017 WL 1505592 (M.D. Ala. Apr. 25, 2017).

### 4. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Three

Petitioner claims in Ground Three counsel erroneously advised her sentencing exposure for pleading guilty would be nine years versus thirty years if she went to trial, and if she had understood her sentencing exposure from a guilty plea, she would not have pled guilty.  (Doc. no. 1, p. 4; doc. no. 1-3, pp. 20-23.)  Under Eleventh Circuit precedent, a counsel's erroneous estimation of a sentencing guideline does not entitle a petitioner to relief because it is not necessarily indicative of ineffective assistance.  <u>Beckham v. Wainwright</u>, 639 F.2d 262, 265 (5th Cir. 1981)[1].  So long as the Rule 11 court correctly advises a

---

[1]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit

defendant of the minimum and maximum penalties she faces as a result of pleading guilty, she cannot to establish prejudice by alleging counsel gave erroneous advice about the sentence she might receive or the possibility for enhancements under the guidelines. See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (no prejudice where counsels deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (affirming district court's refusal to allow withdrawal of guilty plea because judge at plea hearing set forth maximum possible penalties and court not bound by counsel's sentencing estimates).

At the Rule 11 change of plea hearing, prior to accepting Petitioner's guilty plea, Chief Judge Hall reviewed the possible statutory penalties for the charges to which Petitioner was pleading guilty. (CR 113-010, doc. no. 470, pp. 13-14.) The Court reviewed the maximum penalties for Counts One, Ninety-Three, Ninety-Eight, 122, and 127, and Petitioner affirmed she understood. (Id.) When Chief Judge Hall asked Petitioner if anyone had guaranteed, predicted, or prophesied Petitioner would receive a specific sentence, Petitioner responded "no, sir." (Id. at 17.)

Thus, it is clear Petitioner knew prior to entering her guilty plea she faced a combined maximum penalty of thirty-four years imprisonment for pleading guilty to Counts One, Ninety-Three, Ninety-Eight, 122, and 127, regardless of whether, as she now claims, counsel told her that her sentence would be nine years or less. (Id. at 13-14.) Furthermore, given

adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Petitioner's sworn testimony she had not been promised a specific sentence and she understood the possible penalties, she cannot now claim counsel made incorrect promises about her sentence. See Stitzer, 785 F.2d at 1514 n.4 ("if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). Because Petitioner's claims are contradicted by her sworn testimony in her Rule 11 colloquy, Petitioner is not entitled to relief.

### 5. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Five

Petitioner claims in Ground Five that her counsel was ineffective for failing to object to the sophisticated means enhancement in the PSI. (Doc. no. 1, p. 5; doc. no. 1-3, pp. 27-28.) Application Note 9(B) of U.S.S.G. § 2B1.1(b)(10) defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(10) cmt. n.9(B) (U.S. SENTENCING COMM'N 2013). The Eleventh Circuit regularly upholds application of this enhancement in tax fraud cases. See, e.g., United States v. Decoste, 692 F. App'x 557, 560 (11th Cir. 2017), cert. denied, 138 S. Ct. 435 (2017) (holding district court did not err in applying sophisticated means enhancement for fraudulent tax return scheme).

While Petitioner argues her case involved "garden variety fraud," examination of her tax fraud scheme reveals otherwise. In addition to filing over 250 fraudulent tax returns, Petitioner recruited others to steal identities and open multiple bank accounts, generated and filed fake W2-G forms showing fabricated lottery winnings from stolen identities, used multiple bank accounts to deposit her fraudulent returns, and carried out this scheme for over two years. CR 113-010, doc. no. 470, pp. 17-18. Therefore, the tax fraud scheme was both

intricate and complex, and the PSI's application of the sophisticated means enhancement was certainly warranted under the U.S.S.G. definition. U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(10) cmt. n.9(B). Mr. Johnson's failure to challenge it was not deficient or prejudicial. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

### 6. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Six

Petitioner claims in Ground Six "Johnson objected to the 250 victims or more enhancement pursuant to USSG § 2B1.1(b)(2)(C), and the two (2) offense level enhancements for vulnerable victims, but he failed to challenge it." (Doc. no. 1-3, p. 28; see also doc. no. 1, p. 5.) Contrary to Petitioner's contention, Mr. Johnson challenged these enhancements through written objections to the PSI and at sentencing, but Judge Hall overruled those objections. PSI Addendum; CR 113-010, doc. no. 465, pp. 3-8. Therefore, because Mr. Johnson attempted multiple times to object to these two enhancements, Petitioner's claim of ineffective assistance is contrary to fact and meritless.

### 7. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Seven

Petitioner claims in Ground Seven that counsel was ineffective for failing to object to her sentence as substantively unreasonable. (Doc. no. 1, p. 5; doc. no. 1-3, p. 28.) In evaluating whether a sentence is substantively unreasonable, a Court must examine "the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). "'The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court,' but 'we will remand for resentencing

if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (quoting United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2007)).

Here, not only did Chief Judge Hall consider the § 3353(a) factors, he also sentenced Petitioner below her guideline range. CR 113-010, doc. no. 465, p. 14. Such a sentence is not substantively unreasonable. See United States v. Aguayo, 563 F. App'x 727, 729 (11th Cir. 2014) ("[T]he district court granted a substantial downward variance and imposed a sentence of 150 months imprisonment, which is 60 months below the low end of the applicable guideline range. We would ordinarily expect such a sentence to be reasonable.") (internal citation omitted). Therefore, Mr. Johnson's failure to challenge her sentence as substantively unreasonable was not deficient or prejudicial. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

### 8. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Eight

Petitioner claims in Ground Eight that counsel was ineffective for failing to file a motion for downward variance based on disparities in sentencing between herself and her co-defendants. (Doc. no. 1, p. 5; doc. no. 1-3, pp. 28-29.) Courts must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, "[a] well-founded claim of disparity . . . assumes that apples are being compared to apples." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (internal quotations omitted). "It is not enough for [a defendant]

to simply compare the initial sentences and reduced sentences of others to his own; there must be comparable underlying factual circumstances." United States v. Summersett, 504 F. App'x 789, 792 (11th Cir. 2012) (citations omitted).

Here, the factual basis from Petitioner's change of plea hearing and the undisputed facts in her PSI indicate Petitioner was not similarly situated to her co-defendants. Petitioner devised the lottery tax return scheme, recruited her co-defendants, prepared the fraudulent tax returns, and opened several bank accounts to deposit the money from the fraudulent returns, encouraging her co-defendants to do the same. CR 113-010, doc. no. 470, pp. 17-18; PSI ¶¶ 9-10, 21-22, 24. As founder, ringleader, and chief participant of the tax fraud scheme, the Court reasonably imposed a longer sentence on Petitioner than her co-defendants. See United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006) ("We conclude it was well within the bounds of reasonableness for the district court to find that [defendant] was an organizer or leader of the conspiracy to obstruct commerce by robbery, and therefore to impose a lengthier sentence on him than on the others."); United States v. Banks, 655 F. App'x 747, 751 (11th Cir. 2016) ("It is within the bounds of reasonableness for a district court to impose a lengthier sentence on the organizer or leader of a conspiracy than on the other offenders."); United States v. Santacruz, 183 F. App'x 879, 883 (11th Cir. 2006) ("[W]e are hard-pressed to conclude that sentencing a manager or supervisor in the conspiracy, who was responsible for coordinating the receipt of drugs from Mexico and the distribution in Atlanta, was unreasonable."). Therefore, Mr. Johnson's failure to file a motion for downward variance based on sentence disparity was not deficient or prejudicial. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Accordingly, Petitioner has not demonstrated entitlement to relief on any claim in her motion and it should be denied.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 13th day of August, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA